Good morning, Your Honors. Mark Fogelman for Canal Properties. I'd like to reserve two minutes for rebuttal. Your Honors, we ask you to correct an enormous injustice. Under the forfeiture provision in the Limited Partnership Agreement, Alliant took Canal's 39-unit building in Marin County, which we believe is worth more than $10 million, based on insignificant and completely cured alleged breaches of the agreement. Well, the jury found that they weren't insignificant or cured, I suppose. They found that they were material. The jury found that they were material, Your Honor, and assessed damages of $102,000, which Judge And, frankly, the jury, we don't know what breaches they found. They quite likely found and could have found, under the instructions given and the evidence given, the failure to file a report was a basis for taking away Canal's building. I mean, possibly shifting a bunch of money to private accounts. Possibly not filing federal income tax returns. I mean, possibly lots of other things. Let me go through the breaches then, the alleged breaches. They were all minimal. The first was the failure to file reports. That was cured in August of 2000, when all of the then-due monthly reports were filed. And then after that, the principals of Alliant told Mr. Andrew Wicks, the managing partner of Canal, not to file any more reports. So he didn't do it. Meanwhile, he was filing weekly reports, tax information, and tax returns. This was a problem caused by the accountant selected by Alliant. Novigradic had done many deals with Alliant. And at one point, because Mr. Wicks was seeing one accountant and then another accountant, then another from Novigradic, he went out and hired Rice Accounting and in two weeks prepared the tax returns. But Alliant said, that's no good. You need Novigradic. So all the income tax returns ultimately were filed. There was no loss of tax credits. There were no penalties. All the K-1s had been presented on time. And so, and there were audits done in 1998 and 1999. No irregularities found in those audits. So you have no problem with the reports. They were all cured. No problem with the tax returns. So let's go to the alleged misappropriations. These were purely accounting and allocation issues. They were cured by Novigradic putting in adjusting journal entries. There was nothing ever hidden, nothing secret, nothing covered up. And in fact, there was no damage. And that's why Judge Ilston just looked, got rid of the jury's damages and looked at the damages of those, which arguably was taking the place of the jury. In any event, the breaches were small. But what did Mr. Wicks, what did Canal Properties lose? After buying this building for $1.34 million, spending $2 million to renovate it, working 12 hours a day for two years to put this building in shape, lost, at the commencement of the partnership, gave the building to the partnership for the period of the deal, but then was entitled to $150,000 per year of revenues after expenses, was entitled to 90 percent of all the additional revenues. And Mr. Kogelman, what do you do about the Corporation Commission Code that says that these forfeiture provisions are enforceable if they were not unreasonable at the time they were made? I'm so glad you asked that, Your Honor, because My pleasure. That's pivotal, because Judge Ilston, who I know is a great judge, got it wrong here. And it's in the record, and it was in our motion for judicial notice. There's legislative history of 15619 that essentially says two things. And this is immutable, and Judge Ilston was dead wrong on these two things. The first is, she said that Hill v. Herron, an old case which says that a complete forfeiture is per se disproportionate, essentially. She said that was overruled legislatively by the statute. That is not the case. You look at the legislative history, the State Bar, the author of the legislation, this was noted that Hill v. Herron is the leading case, and said this was intended to continue existing law. So Hill is really dispositive here. Secondly, 15619, according to the legislative history, is an embodiment of the liquidated damages law of California. It borrows verbatim the liquidated damages language from section 1671 and puts that in. That means that two other cases, excuse me, the Ridgely case, Ridgely v. Topith-Thrift, and the Harbor Holdings case, which say a complete forfeiture where the forfeiture bears no relation to the size of the breach. It's a penalty, and it's unenforceable. California abhors a forfeiture. The California courts would not tolerate this, Your Honor. Kagan. Judge Ilston found that it was proportionate. She did, but by that time, I respectfully suggest she was somewhat locked in. Well, not really. If she had the benefit of a trial, she sat through it. She said she was bound by her earlier rulings and by the jury's findings. Let me tell you how this deal works. It's about a 200-page agreement. You can't possibly understand it unless you spend days with it, I know. And what happens is if there's a material breach, which could be the failure to file a report, you know, a one-page report, then that automatically under the agreement equals a major default. And that means you lose your interest. Alliant did this before, and they've lost in court trying to take people's property. There's another case. And basically, this was a form of adhesion contract. Well, as Judge Ilston pointed out, you know, your client had a very sophisticated lawyer at hand in negotiating the agreement. The agreement says what it says, but two people agreed to it. My client. And so if it's got some onerous provision in it, well, it was agreed to. My client was essentially a mom-and-pop operation. They bought this building and through hard work tried to make something of it. Alliant had many, many of these deals. They did hire a lawyer, a good lawyer, Stephen Ryan of Landell's Ripley & Diamond. Mr. Ryan looked over the agreement. Ultimately, my client was given signature pages, not even the whole agreement, and signed the signature pages because he wanted to get the deal going. Probably not very prudent. But you have a situation where Mr. Ryan testified below that in after reviewing 1,000 of these deals, he had never seen a situation where anyone had tried to remove a partner and take their interest based on the failure to file reports. Testimony in the record. You wanted to save two minutes? It's two minutes. I beg your pardon? You wanted to save two minutes. You have two minutes left. Yes, Your Honor. Thank you very much. Good morning, Your Honors. I'm Richard DiNatale from Heller Urban. And we represent Alliant in this case. This appeal arises out of a partnership that was created to develop and run an affordable housing apartment building in Marin County. I'm going to ask you about your position on the two statutes. Yes. What is your position as to the effect of Civil Code section 3275? I may say two things about that, Your Honor. First of all, we do believe that Judge Olson independently examined forfeiture 3275. No, no. That's not your question. The question is on what your position is as to 3275. Is it valid? Is it effective? Our position, that is, in the context of limited partnerships, that the Corporation's Code applies rather than the forfeiture statute. So you say it's pro tanto repealed as to limited partnerships? That is right, Your Honor. Now, that's not what Judge Olson did. She applied it. That is right. That is right. And she applied it not by measuring the harm and weighing it against the remedy, but simply by applying the same test as under the newer provision on limited partnerships, by saying if it was reasonable at the time, then it's reasonable. I don't believe her order can be read that way, Your Honor. Her order discusses the two statutes in both sections. Well, here's what she says. As the Court recognized in its earlier order, if indeed such removal provisions are standard industry practice, there's an influence that they are reasonable. That's right, Your Honor. That's what she said in deciding it under 3275. Right. In 3275, first that order addresses the Corporation's Code, and she's now asking to move it to a pre-trial ruling. Well, I'm talking about the section on section 3275. The section on 3275, Your Honor, she lays out the statute. She cites the relevant standard. She does refer to the pre-trial ruling, but then she says she does not believe that this agreement resulted in a disproportionate forfeiture. So where is that? That's on page — I think it's the last words of the paragraph, Your Honor. On page 14. Yes. Yes. 13. It does not result in a disproportionate forfeiture. And then in the broader context of the order, Your Honor, she goes on at great length to discuss the evidence. She upholds the jury's finding of the materiality of the breaches. And she applies the right standard under 3275. So the only way one could criticize this order, I think, is by criticizing her for not listing in microform all the detailed bases of her reasoning on an abusive discretion standard, which Jiltson cites the right standard, cites the statute, cites the evidence in her order, and comes to the conclusion that she's going to decline to exercise her equitable discretion. I don't think that can be reversed on an abusive discretion standard. And, Your Honor, I would also refer you to the next section, which is the — Well, what does 3275 provide? Does it provide that the forfeiture is valid unless it's disproportionate? Or does it provide that the forfeiture can be avoided by making full compensation Both, actually. It says a forfeiture, a party may be relieved from forfeiture in a court's equitable discretion if it is made full compensation, and if the forfeiture is disproportionate. And that wraps in a lot of California and other case law. Well, where in the statute does it say this — or you're not thinking about the statute. You're thinking about how California's interpreted it. Right. There's no automatic requirement that every — a forfeiture just means, as you know well, Your Honor, you know, when you lose an interest, your interest is reduced based on your breach. So lots of things are forfeiture. The question is, is it an unlawful forfeiture, a disproportionate forfeiture? And here we don't have that for a couple of reasons. What here is the loss, and what is the amount of the remedy? I'm glad you — I'll borrow from Mr. Fogelman's answer. I'm glad you asked me that question. Because Canal in serious ways mischaracterizes the loss. Canal had no equity interest in this building. And I want to say that again, because Canal talks about the millions of dollars of equity interest it had. It had no equity interest in this building. Canal sold the building to the partnership and received money for that. The building was valued in the agreement at $1.3 million. But when the partnership was formed, Canal sold the building to the partnership. And the partnership took title. The partnership assumed the $1.8 million mortgage. The partnership paid Canal $300,000 developer fee and paid all its rehabilitation expenses. So as the time of the partnership is formed, Canal has no equity interest. It has a right to cash flow, to ongoing cash flow, and perhaps a right to sales proceeds in the 15-year future if the building is ever sold. And all that is in exchange for Canal's duties, performing its duties. And that's important because that makes this remedy not disproportionate, because Canal stopped performing its duties for a year. And I heard counsel say they were trivial breaches. The fact is they weren't. The jury found they were material. Judge Ilson details them in her post-trial ruling. They were material. No tax returns filed. No audited financial statements. Misappropriation of funds. That calls into question Canal's honesty. Inability to cure over many months, which makes the breaches material. And in light of those material breaches, Canal is not doing its job. So when you have a party that's not doing its job, but is supposed to be getting cash flow in exchange for its duties, there's nothing unfair or disproportionate about saying you're not going to get the cash flow because you're not doing your job. We're going to remove you as the managing partner. We're going to remove you from the partnership so you don't get the right to future cash flow. Well, aside from the abstract philosophical weighing of losses, financially, what was your loss and how much was forfeited? We think what was forfeited, to answer the second part first, was Canal's ongoing right to cash flow because it had no equity interest in the building. And which was roughly how much a year? There were – there was disputed evidence on that at trial, Your Honor. And that was at trial. And a number of $150,000 I think was too high. I think evidence from our people is that it was less than that. But you could call it somewhere in the low six-figure range. And what were your damages? The damages that Alliance suffered were many. One were the damages of the misappropriated funds, which Canal never repaid to the partnership. And the liquidated damages that were awarded to Alliance didn't compensate it for the over $100,000 that Canal misappropriated from the partnership and never repaid. Secondly, there was a huge – Well, you know, this is the problem with the arguments often. Counsel says it was all repaid. It was just a paper adjustment and it was done. And you say, no, that's not true. It's absolutely not true, Your Honor. The accountants did make an adjustment. But the accountants asked Canal to repay the money and Canal never did. And that's evidence in the record, and I believe it's recited in Judge Ilson's order. There was – there were paper adjustments made by the accountants, but they asked Canal to repay them and Canal never did, $100,000-plus. Alliance also suffered huge potential harm in the loss of the tax credits. This is a highly regulated Federal program, and Canal's failure to file the tax returns and keeping the books and records and what the accountant says were the worst he had seen in 10 years and missing some deadlines on the tax credit front endangered the tax credits. And then thirdly, and this is intangible but I think is important, Your Honor, is the inherent harm due to Canal's breaches of fiduciary duties. I think the partnership agreement very fairly and proportionately said if you breached your fiduciary duties to us, which would call into question your honesty, your fitness to be a partner, you can be removed from the partnership. And you can't put a dollar value on that, but there's a huge inherent problem, an inherent harm with having a partner that's misappropriated funds from the partnership and used partnership money for its own purposes. And in that light, the remedy of removing it from the partnership and taking its economic interest is not a disproportionate remedy. And if I may, I'm in my last couple minutes here. I do want to stress that the Court did not stop, we believe, with the Corporation's Code analysis. The Court looked at 3275 independently in light of all the evidence and came to the correct ruling that this was not an unlawful forfeiture. And what Canal really challenges is the Court's refusal or deciding not to hold a second phase trial. Canal insists that the Court was required to hold a phase two trial on the equitable forfeiture issues. And there's no authority at all. The Canal has cited nor none that we have found, no Federal authority, no State authority that requires a phase two trial. Indeed, bifurcation was expressly waived by Canal in their pretrial papers where they said, we don't think bifurcation is necessary or appropriate here. And bifurcation wasn't required. The way Federal courts do it, as you well know better than I do, is that when legal and equitable claims are related to a common set of facts, you hold a trial and you try the claims together. And then the Court decides the jury decides the legal claims. And then the Court, in light of the legal decisions by the jury, which are binding on the Court, and in light of the other evidence heard at trial, the Court decides the equitable issues. And that's exactly what Judge Ilston did. We had a trial. The jury found material breaches. The Court invited further briefing. And then in light of the jury's findings and in light of the other evidence which is all recited in that order on the post-trial motions, the Court declined to exercise its discretion to relieve Canal of forfeiture. And on an abuse of discretion standard, we submit that that shouldn't be overturned. Thank you. First of all, let me go to Judge Silverman's question earlier about 15619. If a forfeiture provision can yield an unreasonable result where a party who contributed $100, no more, can take another party's $10 million building, that is not a reasonable provision under the circumstances at the time at which the contract is made. And that's why Mr. Ryan testified as he did. Well, actually, wasn't your interest just the economic interest in a return each year if a return produced a net profit? No. There was a management fee. There were revenues. You got $300,000 management fee, and you got taken out of your highly leveraged position, so. No. It was a development fee that you're talking about. First of all, in terms of repayment. You got a $300,000 development fee, right? $279,000 that was supposed to be paid by a liant into the partnership was never paid. So in terms of the other thing is their payments were so late. Mr. Wicks is running around with his credit card trying to pay the people who are doing the rehabs and the construction. He's saying, what breaches were there? Can you please tell me what breaches there were? What reports? I'll get them to you. What tax information? Nova Grotek is not cooperating with him. This was a setup, and it's not fair. They contributed $100 to this partnership. They're taking a $10 million building. There is no 39-unit building in Marin County that's not worth $10 million. But even if you assume it's $3 million, $4 million, $5 million, it doesn't make a difference. It's a disproportionate forfeiture, and there has been compensation. These were entries. Let me tell you about the four elements of the alleged misappropriation. There was no misappropriation. One was interest paid on a loan prior to the formation of the partnership. Nova Grotek messed that up. The jury didn't even countenance that. Another was security deposits, which were being held. Obviously, they were in Canal's account because the checks were made out to Canal, but they were being held in trust for the tenants. That wasn't going anywhere. And then there was a $38,000 payment that was made for another property from Canal accounts. These were all things that were adjusted by Nova Grotek. They got their payment. Under 3275, there was compensation. You can't, I mean, getting down to it, Alliant contributed nothing, and they got this building. They got the cash flows. They got the economic interest. It's not fair. This is an equitable issue, and they took away the building, and I'm asking this Court to give it back. With respect to the second phase hearings. How would we do that? Well, very easily, because we've asked for a hearing. And, in fact, if you go to. Okay. What you don't really want us to do is to order that building somehow returned. Well, I'd like to try and answer your question as best I can. Well, no, but what you just got through saying was you would like for us to give your building back. My question is, how do you propose that this Court order your building back? Well, I'm speaking euphemistically, you might say, in terms of building. I'm talking about the cash flows. I'm talking about the interest that was lost. In fact, the Foundation for Affordable Housing, which is the managing general partner, has an option which they have now given to Canal with respect to the possible return of the building at the end. The status of that is a little bit unclear. But what Mr. Wicks lost, what Canal lost, was 15 years of cash flows, which I think ridiculously low, the estimate of $150,000 per year. That still, over a period of 15 years, comes out to something close to $2 million. Well, in answer to Judge Reimer's question, do you want, if you win, do you get reinstated as a partner? Is that the? Not necessarily. What we're saying is if you're going to go with the removal, and frankly, there's no reason for the removal. But if you go with the removal, fine. What we're saying is unlawful under California law is the forfeiture. You've got to overturn the forfeiture. And I've got to make just two more points. I apologize. But there were a lot of questions. Well, you said the forfeiture is being kicked out of the partnership. Pardon? The forfeiture is being kicked out. Well, you get kicked out, and then there's a provision that says you lose your interest, all financial interest. And the way to restore it would be to put them back in. Well, that would be one way of doing it. Another way of doing it would be to say that the forfeiture. Is it possible to leave you out of the partnership and still allow you to retain your interest? The forfeiture and the interest are combined. You can remove the status of administrative general partner. I mean, you can leave that standing. Frankly, I think they're interrelated. Are you asking the gentleman if he can? He asked whether you could keep your interest and still be removed from the partnership. And I'm saying that you can remove Mr. Wicks and yet effectuate California policy, which says that the forfeiture, the loss of the interest, is disproportionate. It cannot stand. And let me tell you, Mr. Wicks did not have an opportunity to put on his case. That is why the other arguments, the materiality, instructional argument, and the amending of the complaint. If you look at AER 449 and 451 at the end of the trial, he's pleading with Judge Ilston. I didn't have a chance to put on my case. There were issues with Mr. Wicks and his lawyers. But this was not a fair result. He's asked now for a hearing. In the request for judicial notice, there's a lot of evidence, and this is only an excerpt, that could be put in front of Judge Ilston. But the bottom line, and this is a dispositional issue for this Court, if you were inclined to send it back for a hearing on equity because all of the evidence did not get presented, then you look at the question, is a hearing really necessary, or is this forfeiture unlawful as a matter of law? And it is. Under Hill v. Herron, under the Tope Thrift Case, under Ridgely, under Harbor Holdings. Thank you. We'd love to hear your opinion. Thank you very much, Your Honors. The case is carried. It will be submitted. Thank you, counsel. The next case on the calendar for argument is Gores v. Schwab and Company.
judges: Reinhardt, Rymer, Silverman